JANUARY TERM, 1882, No. 304.                    MARCH 27TH, 1882.

## Levering *versus* Willard *et al.*

1. A. and B. agreed with C. that they would " furnish lumber to be used in the aforesaid houses (as ordered by the said C.), delivered on the ground, and will charge therefor the following prices per thousand feet," specifying certain kinds of lumber and prices, and " will accept in settlement of their bills, rendered for the materials as above, one-half thereof in cash monthly, on the first day of every month, and one-half thereof in good improved first mortgages."

D. covenanted with A. and B., " that the payments agreed to be made to them in said agreement, shall and will be made in the manner and form in said agreement mentioned, for all the lumber delivered to the ninety-eight houses in said agreement mentioned." A. and B. furnished lumber to C., some of which was not of the kinds and prices specified in the agreement. Both C. and D. made payments on account.

*Held*, that D.'s covenant was a contract of suretyship and not of guarantee.

*Held*, further, that it was not restricted to the kinds of lumber and prices specified in the agreement between the original parties.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas, No. 3, of *Philadelphia County.*

Covenant by Edward Willard and David H. Kochersperger, trading as Willard & Kochersperger, against William A. Levering, upon an instrument under seal, covenanting that certain payments agreed to be made by one S. R. Good would be made.

Upon the trial in the court below, before LUDLOW, P. J., the following facts appeared.

[Levering v. Willard et al.]

The plaintiffs and Good entered into an agreement, dated December 8th, 1877, reciting that Good, a builder, had in course of erection ninety-eight houses, on a lot of ground on Aspen Street, and providing that the plaintiffs "will furnish lumber to be used in the aforesaid houses (as ordered by the said Good), delivered on the ground, and will charge therefor the following prices per thousand feet." The agreement then set forth certain kinds of lumber and the prices, and provided further that the plaintiffs "will accept, in settlement of their bills rendered for the materials as above, one-half thereof in cash monthly, on the first day of every month, and one-half thereof in good improved first mortgages," etc.

January 4th, 1878, the defendant covenanted and agreed, by an instrument under seal, with the plaintiffs, "that the payments agreed to be made to them in said agreement shall and will be made in the manner and form in said agreement mentioned, for all the lumber delivered to the ninety-eight houses in said agreement mentioned; provided, however, that I am not to be responsible for any such lumber delivered in excess of fifteen thousand dollars."

Plaintiffs claimed for lumber sold to Good, to the amount of $5887.45, and admitted credits of cash paid by him of $2250, and a mortgage transferred as cash by Levering for $2375. The plaintiffs gave a receipt for this mortgage, dated August 30th, 1878, setting forth: "This assignment is made and received in payment of the sum of twenty-three hundred and seventy five dollars, for lumber furnished by us to S. R. Good, and unpaid by him, for the buildings at Thirty-ninth and Aspen streets, upon a certain contract, dated December 8th, 1877, between us and S. R. Good; and for the payments thereunder by S. R. Good the said W. A. Levering is responsible.

"By virtue of this assignment, we hereby release W. A. Levering as guarantor for the payments under the contract by S. R. Good, except for the balance of twelve hundred and sixty-two dollars and forty-five cents, still due us over and above the said sum of twenty-three hundred and seventy-five dollars."

The defendant testified that he signed the guarantee; that he had a conversation with Willard in regard to prices, that he was desirous of confining his liability, and that the only agreement made was as to the articles specified.

He further produced evidence to show that part of the claim, amounting to $938.75, was for items of lumber not specified in the agreement of December 8th, 1877, and that upon other items there were charges amounting to $181, and $237, beyond the rates named in that agreement.

Counsel for the defendant presented, inter alia, the following points:

[*Levering v.* Willard *et al.*]

1. That the instrument on which suit is brought is a guarantee, and plaintiffs, not having shown that they pursued the original and primary debtor, cannot recover against the guarantor.

3. That even if this contract be considered a contract of suretyship, Levering only agreed to become surety for the payment of money for certain kinds of lumber, specified in the original contract between Good and plaintiff.

4. As Levering guaranteed payment for lumber of a certain quality and kind, and the evidence shows that the lumber furnished was of a different kind, he is only liable for the value of the kind of lumber he guaranteed.

5. As defendants in this case guaranteed payment for a certain kind of lumber, and that kind was not furnished, he is not liable at all.

11. The plaintiffs must show that they used all reasonable diligence to compel payment by Good. If they have not done so, then they have no claim against the defendant under the guaranteed contract.

The Court refused the 1st, 3d, 5th, and 11th points, and, as to the 4th, said, " Refused, if by this point it is intended to say, that Levering was only liable for the lumber mentioned in the contract between Good and plaintiffs." He charged the jury, *inter alia :*

" You have heard this instrument called a guarantee. [I may say here that, in point of law, although the word guarantee is used, it is the opinion of the Court, that the instrument is a contract of suretyship.] A surety agrees to pay if the principal debtor does not ; a guarantor if the principal debtor cannot. In the first place, the creditor need not press the original debtor, but in a guarantee he must show that the debtor cannot pay. That is the law.

"[Now I say that this is an agreement to pay at all events, and therefore an agreement to pay if the other debtor does not, and not if he cannot.]

" Assuming then that this is so, there is another and very nice question. [I instruct you, as a matter of law, under the original agreement between Willard & Kochersperger and S. R. Good, that by the terms thereof, the lumber to be provided is lumber to be generally furnished, and not only the special lumber mentioned in said agreement.]

" The reason is this :

" In the first clause of the instrument it is specified, that ' they will furnish the lumber to be used for ninety-eight houses, etc.' [and it is not anywhere stated that the only lumber for the payment for which Levering in his agree-

ment undertakes to be responsible, is that which is specified in this agreement between plaintiffs and S. R. Good].

"[While I agree that no sum can be charged for lumber specified in this agreement beyond the price agreed on, a fair price can be charged for other lumber, not therein mentioned by description or price.] This was a large operation, and it is not denied that certain lumber was used covered by the terms of the guarantee.

"If you believe that this extra lumber was furnished, the case of the plaintiffs rests further on the admission of defendant that some twelve hundred dollars was due. Witnesses have said, that a receipt was signed by Willard & Kochersperger for the benefit of defendant, and this receipt is produced. The witness, Moore, says, that Willard and he and Levering were present, and the ideas were given him by Willard and Levering, and that the balance was due when called for. Good was examined to show, that, in a settlement between Levering, Sprogell and the witness, the claim of the plaintiffs was an item in his account with the parties, and the balance was offset by transfer of properties by Good to Levering. This paper is a release of defendant from his liability under the guarantee, except for the $1262.45, therein mentioned. Again, there is the letter of July 15th, 1878. This is the plaintiff's case in brief.

"[The defence is, that for certain lumber plaintiffs cannot recover, because it is not covered by the terms of the agreements between Good and the plaintiffs, and the plaintiffs and defendant. This is not a sufficient defence under my construction of these agreements.]

"There is also in evidence a contemporaneous conversation between Levering and one of the plaintiffs which I admitted. The defendants say that the guarantee was to extend only to the articles of lumber mentioned by description and price in the agreement of December 8th, 1877. [As to this agreement, it is a question of fact whether or not, under the evidence, it was modified by the parties to it so as to exclude all other lumber except that mentioned by description and price in the written agreement. That is a question of fact which I leave to you.]

"Now we come to the release. The defendant says he never intended this as a final settlement, his idea being that when it was signed he was not aware of the exact amount due. It was in evidence that he had no knowledge of the amount due, but that it was suggested to him by the other side. [If you believe that Mr. Levering was not aware of what he did, and simply executed the release under the impression that he was being relieved from further liability on his guarantee only, then you must give him the benefit of the doubt.]

" [Tt is alleged that the hemlock joists were charged for, some in one way and some in another, and not according to the agreement. It is for you to say whether this is so or not.]"

Counsel for defendant excepted to the answers to the points, and to those portions of the charge within brackets.

May 6th, 1880.    Verdict for the plaintiffs for $1378.94, upon which judgment was subsequently entered.

The defendant then took out a writ of error, assigning as errors the charge and the answers to the points as above set forth.

*William Drayton*, for plaintiff in error.

The question as to whether this instrument is a guarantee or contract of suretyship, is a very nice one, for, although an instrument closely resembling this in Gilbert *v.* Henck, 6 Casey, 205, is called a guarantee, yet, in Reigart *v.* White, 2 P. F. S., 438, this is criticised, and still more so in Frechie *v.* Drinkhouse, 4 W. N. C., 298. And a careful examination of the difference between those cases where the guaranty is general and where it is special shows this distinction. Where the agreement is for the payment of a definite sum or, what is the same thing, for the payment of rent, which can be rendered certain, the contract is one of suretyship: Allen *v.* Hubert, 13 Wr., 259; Seltzer *v.* Greenwald, 2 W. N. C., 395; Ashton *v.* Bayard, 21 P. F. S., 139; Campbell *v.* Baker, 10 Wr., 245.

If Levering is a surety, what are his responsibilities? They are limited by the contract which he makes, and cannot be carried beyond it. This principle is settled by every case both in England and this country. It is enunciated in Stoughton *v.* Day, Aleyn, 10; Arlington *v.* Merricke, 2 Saunders, 403: Miller *v.* Stewart, 9 Wheaton, 680; Hibbs *v.* Rue, 4 Barr, 352, in Pennsylvania; Bank *v.* Barrington, 2 P. & W., 27; Dundas *v.* Sterling, 4 Barr, 79.

Where a guarantee was made at the same time as the agreement, to which it is collateral and is contained in the same instrument or indorsed thereon, the whole is to be taken together as an entire instrument: Meriden Britannia Co. *v.* Zingsen, 48 N. Y., 247; Morss *v.* Salisbury, 48 N. Y., 636; Rogers *v.* Kneeland, 10 Wend., 219; Adams *v.* Hill, 16 Me., 215; Blim *v.* Torode, 4 Phila., 118.

From these authorities we are entitled to say that these two agreements, of December 8th, 1877, and January 4th, 1878, are to be read together, and all that Levering is liable for is what Good agrees to pay for in his contract with plaintiffs.

*M. Hampton Todd,* for defendants in error.

It is a contract of suretyship. It is not a contract that if Good is unable to pay Levering will pay, but it is a contract that if Good does not pay Levering will pay. The language is, " That the payments agreed to be made to them in said agreement shall and will be made in the manner and form in said agreement mentioned for all the lumber delivered to the ninety-eight houses in said agreement mentioned."

The " manner and form" was one-half cash and one-half mortgage. The cash monthly, and the mortgage when due, *i. e.,* when lumber was delivered in an amount sufficient that one-half thereof would be equal to the amount of the mortgage.

The distinction between a suretyship and a guaranteeship is, " That a guaranteeship is where one contracts that another is able to perform, and a suretyship is where one assumes to perform the contract of the principal debtor if he should not:" Reigart *v.* White, 2 P. F. S., 438 ; Kramph *v.* Hatz, Id., 525.

" I do hereby guarantee to Sherman & Co. the payment of contract made by them with Davis & Woods to the amount of ten thousand dollars," was held in Woods *v.* Sherman, 21 P. F. S., 100, to be a suretyship, the Court saying : " If we substitute any other word . . . . for the word guarantee, as ' promise, agree, or undertake,' there can be no doubt that the writing would impart an absolute and direct engagement for the payment of the contract."

The plaintiff in error says that the broad language of the obligation signed by him, when it says he is responsible for the payment " for all the lumber delivered to the ninety-eight houses in said agreement mentioned," is to be restrained by the language of the agreement with Good, so as only to include the lumber for which prices are given in the agreement.

We think there are three good answers to this view :

(A) It is not the true construction of the agreement with Good.

(B) It is not the construction placed upon the agreement by the parties.

(C) That even conceding, for the sake of argument, that the construction contended for by the plaintiff in error is correct, it would be inequitable to allow him to take the fruits of the receipt of August 30th and to charge the full amount of this bill in his settlement with Good, and at the same time repudiate his liability for this lumber.

APRIL 10TH, 1882.—PER CURIAM: We think that the undertaking of the defendant was an original contract of suretyship, not a guarantee. It was that the payments should be

[The Lombard and South Streets Passenger Railway Company *v.* Steinhart.]

made in the manner and form mentioned in the agreement for all the lumber delivered to the houses. We think, upon the construction of the agreement and the subsequent transactions between the parties, it was not restricted to the kinds of lumber and prices specified in the agreement between the original parties.

Judgment affirmed.